**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CANDICE M. KILLION,**

                                **Plaintiff,**                    **1:12-cv-027**
                                                                 **(GLS/RFT)**

                **v.**

**NEW YORK STATE DEPARTMENT**
**OF TAXATION AND FINANCE,**

                                **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Jack E. Houghton, Jr.           JACK E. HOUGHTON, JR., ESQ.
78 Bartlett Avenue
Pittsfield, MA 01201

**FOR THE DEFENDANT:**
ERIC T. SCHNEIDERMAN                       ADRIENNE J. KERWIN
New York State Attorney General           Assistant Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

        Plaintiff Candice M. Killion commenced this diversity action under 28

U.S.C. § 1332, asserting claims against defendant New York State

Department of Taxation and Finance ("the Department") regarding its assessment and collection of certain New York State taxes.  (*See* Compl., Dkt. No. 1.)  Pending is the Department's motion to dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) and (b)(6).  (*See* Dkt. No. 5.)  For the reasons that follow, the motion is granted.

## II. Background

### A.    Facts[1]

In 1982, Killion's father created TAK, Inc., a Massachusetts corporation, ostensibly operating as a construction company.  (*See* Compl. ¶¶ 6-7.)  Killion "performed various bookkeeping functions for TAK but, otherwise, had no decision making authority," and she left the company in 1993 as it was failing.  (*Id.* ¶¶ 7-9.)  TAK ceased operation in 1994 and, in the same year, the Department notified TAK that it would be audited regarding its business activity in New York State.  (*See id.* ¶¶ 10, 15.)  An auditor "ultimately deemed TAK liable for . . . taxes it failed to collect" from

---

[1] These facts reflect the court's appreciation that, under Fed. R. Civ. P. 12(b)(1), it must accept the facts alleged in the complaint as true, but should not draw inferences favorable to the plaintiff because of the requirement that jurisdiction be affirmatively shown, *see J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004), whereas under Rule 12(b)(6), it must both accept the facts alleged as true and draw all favorable inference in favor of the plaintiff.  *See Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

certain New York clients.  (*Id.* ¶¶ 16, 19.)  That finding was challenged by

TAK, which eventually requested a conciliation hearing.[2]  (*See id.* ¶¶ 20-

28.)  Despite TAK's request, the Department demanded payment of the

delinquent taxes and, eventually, issued a tax warrant for unpaid sales tax.

(*See id.* ¶¶ 29, 31.)

In 1995, Killion filed for bankruptcy under Chapter 7, and, in 1996,

she was issued a discharge injunction from the Bankruptcy Court in the

District of Massachusetts.  (*See id.* ¶ 12.)  Killion later moved to reopen the

bankruptcy proceeding in 2004 for the purpose of including the Department

as a creditor; that motion was granted and the Department was added to

Schedule F.  (*See id.* ¶ 13; Dkt. No. 1, Attach. 1 at 5.)  Killion "[t]hereafter

. . . received a bankruptcy discharge . . . as to any obligation to the State of

New York, including any outstanding taxes."  (Compl. ¶ 14.)

Notwithstanding the discharge injunction issued by the Bankruptcy

Court, the Department began collection, including "levies against [Killion's]

employer, credit union, and bank accounts."  (*Id.* ¶ 34.)  In 2011, Killion's

counsel advised the Department by letter of the underlying bankruptcy and

"demanded that the State of New York forever cease its collection efforts

---

[2] While a hearing was scheduled, it apparently never occurred.  (*See* Compl. ¶ 30.)

against [Killion]." (*Id.* ¶ 38; *see* Dkt. No. 1, Attach. 1 at 1-2.) To date, the Department has successfully collected in excess of $4,583.00 from Killion as a result of its efforts. (*See* Compl. ¶ 40.)

## B.  <u>Procedural History</u>

Killion commenced this action asserting five claims against the Department. (*See* Compl. ¶¶ 46-59.) The first of Killion's claims seeks preliminary and permanent injunctions enjoining the Department from further collecting any tax from her, (*see* Compl. ¶¶ 46-47); the second, a declaration that she owes no tax to the Department "on account of the running of the relevant statute of limitations," (*id.* ¶¶ 48-49); the third, that the Department be held in contempt for violating the discharge injunction, (*see id.* ¶¶ 50-54); the fourth, damages for conversion, (*see id.* ¶¶ 55-57); and the fifth, damages for unjust enrichment, (*see id.* ¶¶ 58-59). Before answering the complaint, the Department moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (*See* Dkt. No. 5.)

## III.  <u>Standard of Review</u>

The standard of review under Rules 12(b)(1) and 12(b)(6), which are "substantively identical", *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d

Cir. 2003), are well settled and will not be repeated.  For a full discussion

of those standards, the parties are referred to the court's decisions in

*Unangst v. Evans Law Assocs., P.C.*, 798 F. Supp. 2d 409, 410 (N.D.N.Y.

2011), and *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218

(N.D.N.Y. 2010), respectively.

## IV.  Discussion

The Department tersely argues that all of the claims asserted in the

complaint are barred by the Eleventh Amendment.  (*See* Dkt. No. 5,

Attach. 1 at 2.)  Killion counters that the Eleventh Amendment does not bar

her first and second claims for injunctive relief and declaratory judgment

because both seek relief that is prospective in nature—an exception to

sovereign immunity.  (*See* Dkt. No. 10 at 1-2.)  As to her third cause of

action, which seeks damages for "a significant violation of the discharge

injunction imposed on [the Department]," Killion asserts that Congress has

"abrogate[d] state sovereign immunity in the Bankruptcy Code," making

"violations of . . . discharge injunction[s] actionable notwithstanding the

Eleventh Amendment."[3]  (*Id.* at 2.)  The court agrees with the Department

_____

[3] Despite the Department's assertion that all of the "claims are barred by the Eleventh Amendment," Killion makes no arguments regarding her fourth or fifth causes of action.  (Dkt. No. 5, Attach. 1 at 2.)  The court, satisfied that those claims are barred in the absence of any

that the complaint should be dismissed.

Sovereign immunity, the principle confirmed by the Eleventh Amendment, generally shields states, their agencies and departments from suit in federal court absent consent, waiver, or abrogation.  *See Va. Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1637-38 (2011); *Papasan v. Allain*, 478 U.S. 265, 276 (1986).  Under the *Ex parte Young*, 209 U.S. 123 (1908), exception, such immunity may also give way when the plaintiff seeks prospective relief from a state officer in certain circumstances.  *See Va. Office*, 131 S. Ct. at 1638.  However, *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  *P.R. Aqueduct and Sewer Auth. v. Mecalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see Pennington Seed, Inc. v. Produce Exch. No. 299, Allied Seed, L.L.C.*, 457 F.3d 1334, 1342 (Fed. Cir. 2006) ("[P]rospective injunctive relief can *only* be had against [a state official]." (emphasis added)).

Here, it is clear that the Department, an agency of New York State, is entitled to raise sovereign immunity so long as no exception applies.  *See, e.g.*, *Walker v. New York*, 150 F. App'x 28, 30 (2d Cir. 2005); *Johnson v.*

---

contention that an exception applies, dismisses them without further discussion.

*New York*, 21 F. App'x 41, 43 (2d Cir. 2001).  As to Killion's first argument, despite the fact that her first and second causes of action seek prospective relief, only the Department is named as a defendant.  (*See* Compl. ¶¶ 46-49.)  Accordingly, both claims "are barred regardless of the relief sought," *P.R. Aquedeuct*, 506 U.S. at 146, and they must be dismissed.

Killion's argument regarding her third claim is more complex.  By citing *In re Hood*, 319 F.3d 755 (6th Cir. 2003), in support of her contention, (*see* Dkt. No. 10 at 2), the court surmises that Killion is asserting that Congress abrogated sovereign immunity by enacting 11 U.S.C. § 106(a)—the rule announced in *Hood*—and, therefore, the Department is amenable to a sanction for violating the discharge.  *See* 319 F.3d at 767-68.  While Killion is correct that States' sovereign immunity has been abrogated with respect to bankruptcy proceedings, it is for a different reason altogether.  In *Central Virginia Community College v. Katz*, the Supreme Court rejected a sovereign immunity defense asserted by state agencies in an adversary proceeding initiated by a bankruptcy trustee. *See* 546 U.S. 356, 359 (2006).  The Court reasoned "that States agreed in the plan of the [Constitutional] Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to

'Laws on the subject of Bankruptcies.'"  *Id.* at 377 (quoting U.S. Const. art. I, § 8, cl. 4).  Thus, notwithstanding the oft questioned viability of 11 U.S.C. § 106(a),[4] which purports to abrogate sovereign immunity as to governmental units, the defense is unavailable "in the bankruptcy arena." *See Katz*, 546 U.S. at 362, 363.

In any event, Killion's third cause of action does not survive the Department's motion to dismiss.  Discharge violations—which, under 11 U.S.C. § 524,[5] include collection of a discharged debt by a creditor—do not give rise to a private right of action.  *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188-89 (7th Cir. 2010); *Necci v. Universal Fid. Corp.*, 297 B.R. 376, 381 (E.D.N.Y. 2003).  Instead, because a remedy for a violation of a discharge is provided by 11 U.S.C. § 105(a), which

_____

[4] A debate existed prior to *Katz* in which the Sixth Circuit found section 106(a) to be a proper congressional abrogation of sovereign immunity.  *See In re Hood*, 319 F.3d 755, 761-67 (6th Cir. 2003), *affd. on other grounds sub nom. Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004).  At least five other Circuit Courts reached the opposition conclusion, *see Nelson v. La Crosse County Dist. Attorney (In re Nelson)*, 301 F.3d 820, 832 (7th Cir. 2002); *Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1121 (9th Cir. 2000); *Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown)*, 133 F.3d 237, 243 (3d Cir. 1998); *Fernandez v. PNL Asset Mgmt. Co. LLC (In re Fernandez)*, 123 F.3d 241, 243 (5th Cir. 1997), *amended by* 130 F.3d 1138, 1139 (5th Cir. 1997); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C.)*, 119 F.3d 1140, 1145-46 (4th Cir. 1997), and other courts expressed doubt about the propriety of the Sixth Circuit's decision without affirmatively ruling on the issue, *see, e.g.*, *Ossen v. Dep't of Soc. Servs. (In re Charter Oaks Assocs.)*, 361 F.3d 760, 766 (2d Cir. 2004).

[5] Killion claims that the Department's collection efforts were in violation of 11 U.S.C. § 524(a)(2).  (*See* Compl. ¶ 33.)

complements "the inherent powers of a federal court to enforce its own orders," *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010), the proper method for seeking a sanction premised upon a discharge violation is a motion for contempt in the bankruptcy court that issued the discharge.  *See Necci*, 297 B.R. at 379 (citing 11 U.S.C. § 105(a)); *see also Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (7th Cir. 2002). Permitting an independent action in the district court would permit the plaintiff to "directly contravene the Bankruptcy Code's remedial scheme." *Diamante v. Solomon & Solomon, P.C.*, No. 1:99CV1339, 2001 WL 1217226, at *6 (N.D.N.Y. Sept. 18, 2001).  Therefore, Killion's third claim must also be dismissed under Rule 12(b)(6).

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Department's motion (Dkt. No. 5) is **GRANTED** and all claims against the Department are **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

9

April 2, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court